Filed 10/13/22  In re C.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re C.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080389 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. J520946AB) |
| L.M. et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of San Diego County, Marissa Bejarano, Judge.  Affirmed with directions.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant S.M.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant L.M.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

S.M. (Father) and L.M. (Mother) appeal the jurisdictional and dispositional order in the Welfare and Institutions Code section 300 dependency proceeding for their daughters, C.M. and M.M. Father argues the San Diego County Health and Human Services Agency (Agency) and the juvenile court did not comply with their initial inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and Welfare and Institutions Code section 224.2.[1] Mother joins in Father's arguments. The Agency concedes in a letter brief that the ICWA inquiry was deficient but argues reversal is not necessary because the ICWA inquiry is a continuing duty. The parties have stipulated to the immediate issuance of remittitur. We accept the Agency's concession, conclude substantial evidence does not support the juvenile court's finding that ICWA does not apply to the proceedings, and agree with the Agency that reversal is not necessary. As such, we affirm the order and direct the Agency and juvenile court to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under section 224.3) on remand.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The Agency initiated these dependency proceedings under section 300 subdivision (d) on behalf of C.M. and M.M. (collectively referred to as the children) in January 2022, alleging the children had been sexually abused, or there was a substantial risk the children will be sexually abused as defined in subdivision (b) of section 11165.1 of the Penal Code by their parent or

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issues on appeal.

guardian or a member of the child's household.  The Agency further alleged the parent or guardian has failed to protect the children adequately from sexual abuse and the parent or guardian knew or reasonably should have known that the children were in danger of sexual abuse.  The Agency alleged that Father sexually abused the children in 2018.  Additionally, Mother does not believe the children's disclosures and allowed Father to return to the family home in November 2021.  The Agency alleged Father and Mother remain untreated and there is substantial risk the children will continue to be sexually abused.

The petition stated the Agency asked Mother and Father about the children's Indian status and they both gave no reason to believe the children are or may be Indian children.

In its January 20, 2022 detention report, the Agency reported that Mother and Father were interviewed on January 12, 2022, and they both denied having any Indian ancestry.  The Agency reported interviewing three maternal aunts, T.B., C.T., and Aunt M.M.,[3] but did not indicate asking these maternal aunts about potential Indian ancestry.

Mother and Father appeared at the detention hearing by video. Father's counsel informed the court that Father identified no Indian ancestry.  Mother's counsel likewise stated Mother denied any Indian ancestry.  The court found that "based on the representation of counsel as well as the information provided in the report for today" ICWA does not apply to the proceedings.  The court made a prima facie finding that the children came within section 300, subdivision (d), and ordered the children detained.

---

[3]     Because one of the children at issue has the initials M.M., we refer to this maternal aunt as Aunt M.M.

In the course of the Agency's investigation, Mother reported that maternal grandparents reside in Florida. Father reported that paternal grandmother resides in Alabama and paternal grandfather resides in Tennessee. He also reported that he has three siblings but did not indicate their whereabouts.

The Agency reported that at some point, Mother wanted to send M.M. to live with paternal grandmother in Alabama. C.M. stated she lived with paternal grandmother in Alabama for "a couple months" in 2021.

Mother stated she would want the children to be placed with paternal grandmother or maternal aunt, M.B.

At the contested jurisdiction and disposition hearing, the court sustained the petitions, made true findings on the section 300, subdivision (d) allegations, declared the children dependents, and placed the children with a nonrelative extended family member. In its written jurisdictional and dispositional order, the court found "without prejudice that the Indian Child Welfare Act does not apply to this proceeding."

DISCUSSION

Father argues the Department and the juvenile court did not satisfy their initial inquiry obligations under ICWA and section 224.2. The Agency concedes error but argues reversal is not necessary. We accept the Agency's concessions and agree that reversal is not necessary. Accordingly, we affirm the order and remand with directions for the Agency and the juvenile court to comply with ICWA and section 224.2 on remand.

A. Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).)

4

Under California law adopted pursuant to ICWA, the juvenile court and Department have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.) An "Indian child" is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord, § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

## B. The Agency's ICWA Inquiry Duties

Father argues the Agency failed to comply with its inquiry obligations because it failed to ask available extended family members about potential Indian ancestry. Specifically, the Agency interviewed three maternal aunts,

5

T.B., C.T., and Aunt M.M., but did not conduct any ICWA inquiry. Father also argues the Agency failed to make any effort to locate or interview other family members identified by Mother and Father during the investigation. Specifically, the Agency did not attempt to locate a fourth maternal aunt, M.B., who was identified as someone to consider for placement, maternal grandparents who were known to reside in Florida, paternal grandmother who was known to live in Alabama, paternal grandfather who was known to live in Tennessee, and Father's three siblings who Father mentioned during the investigation.

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the [Department], the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

Here, the Agency concedes, and we agree, it should have conducted an ICWA inquiry of the three maternal aunts that the Agency interviewed during its investigation, T.B., C.T., and Aunt M.M. The Agency also concedes, and we agree, that it should attempt to contact and conduct an

6

ICWA inquiry of the fourth maternal aunt, M.B., and paternal grandmother, both whom Mother requested be considered for placement.

The Agency refuses to concede it has a duty to search for the other extended family members that Father identified in his opening brief, maternal grandparents, paternal grandfather, and Father's three siblings because "it is unknown whether their contact information was readily available to the Agency." We conclude the Agency did not have a duty to seek to interview these individuals where the record does not reveal the Agency had any contact information for these individuals, and the Agency is not required to "cast about" for information. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1053.)

The Agency added its own concession that it should have conducted an ICWA inquiry of C.M. and M.M. themselves, who are 16-years-old. We accept the Agency's concession where section 224.2, subdivision (b) requires an inquiry of the child, with no applicable age limit. (Compare with 25 U.S.C. § 1903(2) [defining "extended family member" as a person who has reached the age of 18]; § 224.1, subd. (c) ["extended family member' . . . defined as provided in [§] 1903" of ICWA].)

Because the Agency failed to conduct an ICWA inquiry of available extended family members and C.M. and M.M. themselves, the Agency failed to satisfy its initial inquiry obligation under section 224.2, subdivision (b), and the juvenile court's ICWA finding is not supported by substantial evidence.

### C. Juvenile Court's ICWA Inquiry Duties

Father argues the juvenile court failed to ask Mother and Father at the detention hearing about potential Indian ancestry and neither Mother nor Father submitted an ICWA-020 form. Father contends the court erred in

7

relying solely on Mother's and Father's counsels' representations regarding Indian ancestry. Father also argues the court failed to advise Mother and Father that if they subsequently receive information regarding Indian ancestry, they were required to provide that information to the court.

Pursuant to section 224.2, subdivision (c), "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."

The Agency concedes the juvenile court failed to obtain ICWA-020 forms and failed to advise Mother and Father of the need to inform the court if they obtained additional information about potential Indian ancestry. However, the Agency contends the juvenile court could properly rely upon Mother's and Father's counsels' representations regarding Indian ancestry.

We conclude the juvenile court was required to by statute, and thus, should have asked Mother and Father about Indian ancestry at the detention hearing and should have instructed them to inform the court if they subsequently receive additional information. (§ 224.2, subd. (c); Cal. Rules of Court, rules 5.481(a)(2)(A) and 5.481(a)(2)(B).) Additionally, the ICWA-020 forms should be completed. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Because the juvenile court failed to satisfy its initial inquiry obligations under section 224.2, subdivision (c), and the juvenile court's ICWA finding is not supported by substantial evidence.

## D. Appropriate Disposition

While the Agency concedes that it and the juvenile court failed to satisfy their initial inquiry duties, the Agency contends reversal of the

8

juvenile court's jurisdictional and dispositional order is not required because the ICWA inquiry is a continuing duty.

The Agency cited *In re S.H.* (2022) 82 Cal.App.5th 166, where the Agency conceded error and the Court of Appeal nonetheless affirmed the dispositional order. The court there reasoned that the Agency has a continuing duty to inquire and the "agency acknowledges error and we thus have reason to believe that its duty of inquiry will be satisfied. Where there is such an acknowledgement, we see no reason to set aside the jurisdiction/disposition order—even conditionally." (*Id.* at p. 176.) Additionally, "the juvenile court, even after it concludes that ICWA does not apply, retains the power (and duty) to *reverse* that determination 'if it subsequently receives information providing reason to believe that the child is an Indian child.'" (*Id.* at p. 176.) The Court of Appeal reasoned the juvenile court was aware of this continuing duty because it made its ICWA finding without prejudice. (*Id.* at p. 177.) "So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the Agency and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*Id.* at p. 179.) The appellant Mother argued that the Court of Appeal must either conditionally reverse or conditionally affirm. (*Id.* at p. 175.) The court refused to do so, instead "hold[ing] that when a social services agency accepts its obligation to satisfy its inquiry obligations under ICWA, a reversal of an early dependency order is not warranted simply because a parent has shown that these ongoing obligations had not yet been satisfied as of the time the parent appealed." (*Id.* at p. 171.) The court affirmed the juvenile court's dispositional order. (*Id.* at p. 180.)

Similarly, here, the Agency acknowledged its initial inquiry was deficient and that it must conduct an ICWA inquiry of the available extended

9

family members as well as C.M. and M.M. themselves. Additionally, in the jurisdictional and dispositional order from which Father and Mother appeal, the juvenile court found "without prejudice that the Indian Child Welfare Act does not apply to this proceeding." Finally, the order at issue here is an early jurisdictional and dispositional order, allowing the Agency and the juvenile court time and opportunity to fulfill their inquiry obligations during the ongoing proceedings. Under these circumstances, we conclude reversal is not required.

## DISPOSITION

The juvenile court's jurisdiction and dispositional order is affirmed. The matter is remanded with directions for the Agency and the juvenile court to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under section 224.3). If the Agency or the juvenile court has reason to believe or reason to know C.M. and M.M. are Indian children, the juvenile court shall proceed accordingly. Remittitur shall issue immediately.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.